**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| KWASI PAYNE | : | No. 15-376-009 |
| | : | |

## MEMORANDUM

PRATTER, J.                                                                NOVEMBER 4, 2021

Kwasi Payne seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), claiming that he is at serious risk of harm from variants of the COVID-19 virus. Because Mr. Payne has declined vaccination, has served less than half of his 10-year sentence, and continues to present a danger to the community, the Court denies his motion.

### BACKGROUND

#### A. Mr. Payne's Request for Compassionate Release

Mr. Payne was involved in a conspiracy to distribute cocaine and marijuana around the fall of 2009 through June 2011. During this time period, he made approximately ten trips from Pennsylvania to California to facilitate the purchase of drugs and committed armed robbery of a drug courier at the Philadelphia International Airport on September 29, 2010.

Mr. Payne pled guilty to one count of conspiracy to distribute five kilograms or more of cocaine and 1000 kilograms or more of marijuana. 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(ii)(II), (vii). He was sentenced to 120 months of imprisonment and five years of supervised release. He is now serving his sentence at Federal Correctional Institution Hazleton.

Mr. Payne suffers from asthma. He was offered the Pfizer COVID-19 vaccine on April 7, 2021 but refused to accept it. He now moves for compassionate release, arguing that his correctional facility has not sufficiently responded to the COVID-19 virus and new variants and

1

that his asthma places him at increased risk of serious infection or death.  Doc. No. 797, at 4–5, 10.

## B.   The Bureau of Prisons' Response to the COVID-19 Pandemic

The Bureau of Prisons ("the BOP") has taken many measures to "mitigate the spread of COVID-19 in [its] facilities" and protect the health of inmates. *BOP Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Nov. 3, 2021). The BOP permits almost no outside visitors, limits inmate movement within the prison, requires inmates and staff to wear masks, and screens all staff daily for symptoms. If an inmate tests positive, the BOP immediately quarantines that inmate and tests and quarantines all contacts. The BOP has also put thousands of eligible prisoners—the elderly, the terminally ill, and those who have almost finished their sentences—in home confinement. 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g); Pub. L. No. 116-136 § 12003(b)(2).

The BOP has offered vaccines to its staff members and inmates. At Hazelton, the BOP has vaccinated over half of the inmates and over 381 of its staff members.  Doc. No. 803, at 9.  The facility houses 1,936 inmates.  *FCI Hazelton*, https://www.bop.gov/locations/institutions/haf/ (last visited Nov. 3, 2021). So far, 138 inmates at Hazelton have recovered from COVID-19; one died. Doc. No. 803, at 8.

### LEGAL STANDARDS

For the most part, courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  But a court can reduce a sentence for "extraordinary and compelling reasons," including a prisoner's medical condition. § 3582(c)(1)(A)(i).  For a non-terminal illness, the court must find that the prisoner has "a serious physical or medical condition

. . . from which he . . . is not expected to recover" "that substantially diminishes [his] ability" to care for himself in prison. U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).[1]

In deciding to reduce a sentence, the Court must also weigh the statutory sentencing factors, set forth in 18 U.S.C. § 3553(a). These factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a).

The court must also consider relevant policy statements from the United States Sentencing Commission. § 3582(c)(1)(A). Thus, before reducing the sentence, the court needs to find that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

On all these considerations, the prisoner bears the burden of proof. *United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa. 2020). In addition, he must show that he "fully exhausted" his administrative remedies within the prison. 18 U.S.C. § 3582(c)(1)(A).

### DISCUSSION

Based on his medical condition and the ongoing pandemic, Mr. Payne requests that the Court reduce his sentence or permit him to complete his sentence on home confinement. But the Court does not have authority to grant him a transfer to home confinement. That is within the sole discretion of the Director of the Bureau of Prisons. 18 U.S.C. § 3624(c)(2); Pub. L. No. 116-136

---

[1] On its face, U.S.S.G. § 1B1.13 governs a "motion of the Director of the Bureau of Prisons" for compassionate release. Thus, this "policy statement is not binding on prisoner-initiated motions." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). Still, it is highly persuasive authority that "sheds light on the meaning of extraordinary and compelling reasons." *Id.*

§ 12003(b)(2); *United States v. Ramirez-Ortega*, No. 11-cr-251-07, 2020 WL 4805356, at *3 (E.D. Pa. Aug. 18, 2020). Thus, to send Mr. Payne home, the Court would have to reduce his ten-year sentence down to the less than five years already served. It will not.

### I.    Mr. Payne has not shown that he is at severe risk

Mr. Payne argues that asthma is recognized by the CDC as a risk factor for COVID-19. *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (last updated October 14, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Nov. 2, 2021). However, asthma is only a risk factor for severe illness from COVID-19 if it is "moderate or severe." *Id.* The Government contends that Mr. Payne's asthma is not moderate or severe and Mr. Payne has presented no evidence to establish that his asthma is moderate or severe. Doc. No. 803, at 16. His medical record reveals "stable" asthma without any recent asthma attacks or daily symptoms. Doc. No. 804, at 111, 114. Thus, the Court does not find that Mr. Payne presents this risk factor for severe COVID-19. *See, e.g.*, *United States v. Sanchez-Olivo*, No. 19-cr-484, 2021 WL 1440260, at *2 (S.D.N.Y. Apr. 16, 2021) ("[T]he record does not establish that Defendant's asthma is moderate-to-severe. Thus, Defendant has not demonstrated the existence of extraordinary and compelling reasons warranting release.").

Further, the "possibility" that the virus "may spread to" a person in a prison "cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Mr. Payne voices concerns about new strains of the virus which are more contagious. However, Mr. Payne has declined the Pfizer vaccine, which is highly effective against identified variants.[2] Shaun J. Grannis et al., *Interim Estimates of COVID-19 Vaccine Effectiveness Against*

---

[2] Mr. Payne notes that he declined the Pfizer vaccine due to past allergic reactions to vaccines. But he does not provide any evidence for this assertion; it does not appear in his medical records. Doc. No. 807, at 3.

*COVID-19–Associated Emergency Department or Urgent Care Clinic Encounters and Hospitalizations Among Adults During SARS-CoV-2 B.1.617.2 (Delta) Variant Predominance*, 70 Morbidity & Mortality Weekly Report 1291, 1292 (2021).

"[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Mr. Payne criticizes this point, arguing that the Bureau of Prisons puts prisoners seeking early release in a double-bind: either an inmate who takes the vaccine is deemed safe and denied release, or an inmate who refuses the vaccine is denied for not accepting the vaccine. Doc. No. 807, at 2. However, this argument fails to recognize that a vaccine for a virus reduces the need for compassionate release based on this virus. A prisoner simply cannot "claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, No. 14-cr-20035, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021); *see also United States v. Gonzalez Zambrano*, No. 18-cr-2002, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them.").

---

Mr. Payne then undercuts this argument by describing a list of additional reasons he would refuse a vaccine anyways, including staff members themselves refusing the vaccine, concerns about development of heart problems, allegations that the employees of the FDA and U.S. military have also refused the vaccine, and an account of an emergency vaccine authorized by the Ford administration causing neurological problems. *Id.* at 3–4.

Based on his lack of risk factors for severe COVID-19 and refusal of the vaccine, the Court finds that Mr. Payne has not demonstrated extraordinary and compelling reasons to warrant compassionate release.

## II.     The sentencing factors counsel against releasing Mr. Payne

Even if Mr. Payne could demonstrate that he was at a substantial risk from COVID-19, the Court would still deny release based on the § 3553(a) factors.

In his short time in prison, Mr. Payne has not been disciplined.  He argues that "he has been deterred by the time he has been in custody and he has shown commendable rehabilitation while in prison." Doc. No. 807, at 10.

However, Mr. Payne's criminal history demonstrates that he continues to present a danger to his community.  He pled guilty to a long-running drug-trafficking conspiracy and committed an armed robbery at the Philadelphia International Airport in furtherance of this conspiracy.  Doc. No. 445, at 4.  To reflect the seriousness of that crime and to deter similar crimes, this Court sentenced him to 120 months' imprisonment. Mr. Payne has served less than half of that sentence. Releasing him now would not "promote respect for the law" or "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A); *see United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.").

While Mr. Payne cites *Pepper v. United States*, 562 U.S. 476, 492 (2011), to argue that the time remaining in his sentence does not reflect the "most up-to-date picture" of his characteristics,

Mr. Payne does not address the fact that the circumstances underlying this Court's original sentence remain unchanged.   At sentencing, the Government argued that "Mr. Payne's involvement in this drug conspiracy occurred after being convicted on a local firearms case" and that his "past involvement with the criminal justice system has not deterred him from continuing to be involved with illegal activity." Doc. No. 445, at 4.  The Government also expressed concern that Mr. Payne's own gunshot wounds in June 1999, August 2005, and June 2015 had not deterred him from perpetuating further gun violence. *Id.* at 5.  The Court considered these factors in Mr. Payne's sentence and sees no basis upon which to revise the determination that Mr. Payne presents a danger to the community.

Mr. Payne cites cases where courts released defendants that had served less than half of their sentences to argue that he too should be released.  Doc. No. 807, at 12.  However, the cases Mr. Payne cites were each decided before a COVID-19 vaccine became available and relied on severe medical conditions combined with the lack of a vaccine and non-violent criminal histories. *See, e.g.*, *United States v. Boykin*, No. 14-cr-201, 2020 WL 6193838, at *4–5 (D.D.C. July 16, 2020) (noting Mr. Boykin's severe obesity in July 2020, prior to the availability of a vaccine, and "that none of Mr. Boykin's crimes include violent acts").  Such cases are inapposite here.

### CONCLUSION

For these reasons, the Court denies Mr. Payne's motion to reduce his sentence. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE